UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | **CRIMINAL ACTION** |
| v. | ) ) ) | **NO. 20-40049-TSH** |
| **CHRISTOPHER RONDEAU,** | ) ) |  |
| **Defendant.** | ) ) |  |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTIONS TO SUPPRESS SEARCH WARRANTS AND
MOTION TO SUPPRESS SEARCH AND STATEMENTS**
September 6, 2022

**HILLMAN, S.J.**

The United States of America (the "Government") charged Christopher Rondeau ("Defendant") with distribution and possession of child pornography. Defendant filed four motions to suppress contending that his online accounts were illegally searched (Docket 59), which provided an improper basis for law enforcement officers to search his residence (Docket No. 66) and his online accounts (Docket No. 71). Defendant further alleges that the statements he made to law enforcement officers were involuntary and should be suppressed (Docket No. 55). An evidentiary hearing was held on May 12, 2022. For the reasons that follow, Defendant's motions to suppress are **denied**.

**Background**[1]

In November 2020, Defendant lived with his family in Auburn, Massachusetts while serving a term of supervised release following his incarceration for receipt of child pornography.

---

[1] The following are facts that the Court finds based on the materials submitted in support of this motion, the audio recording of the Defendant's interview and the evidentiary hearing held on May 12, 2022.

*See* Criminal Case No. 4:16-CR-40019-TSH.  When law enforcement officers executed a search warrant at his home, they discovered an unauthorized cell phone containing child pornography hidden under a dresser in Defendant's bedroom.  When asked, Defendant admitted the contraband cell phone was his.

*Defendant's Prior Child Pornography Conviction*

In 2015, law enforcement officers identified Defendant after he accessed numerous child pornography files from a residence in Worcester. Agents executed a federal search warrant at that residence which the Defendant shared with his uncle. Agents seized several devices, including a Compaq laptop computer.  An on-scene, preliminary forensic examination of that computer revealed the presence of over 1,700 image and video files depicting child pornography and child erotica.

Defendant was subsequently located and interviewed at his place of employment in Ashland, Massachusetts.  Defendant admitted that he had Instagram, Tumblr, Kik, and Facebook accounts. Defendant told the agents that he viewed and downloaded more than 100 images depicting child pornography from the TOR network.  He further admitted that he downloaded videos depicting child pornography from a blog site and that he masturbated to the images, saved them to his laptop, and backed the files up on an external hard drive.

Defendant admitted trading child pornography with another user on Kik, corresponding with a minor female, and trading nude images with the minor. Defendant communicated with the minor via Skype, used Skype to engage in mutual masturbation sessions, took sexually explicit screen shots the minor with his cell phone, and corresponded with and exchanged sexually explicit images with other minor females via Kik over the past couple of years.

2

At the conclusion of the interview in 2015, Defendant was arrested. At the time of his arrest, Defendant was in possession of a black iPhone 5S. On the same date, the Court authorized a federal criminal complaint for receipt of child pornography and possession of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and (a)(5)(B), respectively. The Court also authorized a federal search warrant for Defendant's iPhone 5S.

A subsequent forensic examination of Defendant's iPhone in 2016 revealed information pertinent to the instant charges filed in 2020. Specifically, the accounts located on his iPhone included email address Chris_rondeau2@yahoo.com associated with his Kik account and identified his Instagram username as "bossadin." In addition, the examination also revealed messages exchanged via Kik Messenger between Defendant and JV-1 pertinent to the 2016 prosecution.

On July 12, 2016, Defendant entered a guilty plea to one count of Receipt of Child Pornography, in violation of Title 18, United States Code, section 2252A(a)(5). On October 5, 2016, this Court sentenced Defendant to serve 68 months of incarceration followed by 7 years of supervised release. Defendant was released from federal custody on August 27, 2019, and his term of supervised release commenced soon thereafter.

*Defendant's 2020 Conduct on Supervised Release*

Law enforcement officers, again, identified Defendant after he accessed numerous child pornography files from his residence, this time in Auburn while he was serving his term of supervised release for his 2016 child pornography conviction. This time Defendant used Tumblr.

*Tumblr*

Tumblr (www.tumblr.com) is a microblogging web site created in 2007 and owned by Oath Inc. (formerly Yahoo! Inc.). Tumblr allows users to post text, photos, quotes, links, music, and videos to their own personal blog. To create their own Tumblr blog, a user provides an email address and chooses a username and password. The username becomes part of the unique web address of the user's blog. For example, an individual with the username "abc123" would have a blog with the unique web address of abc123@tumblr.com. A user can create secondary blogs under their registered email address. A secondary blog offers different features than a user's primary blog, including the ability to password protect the blog and have multiple users post to the blog. Defendant admitted to agents that he used Tumblr when he was interviewed in 2015. Tumblr users can also "follow" certain Tumblr blogs. If a user "follows" a blog, the posts from that blog will show up on the follower's "dashboard," which is a Tumblr user's main screen. Tumblr blogs can have several different access levels. The standard Tumblr blog is public and is accessible to anyone with the unique web address of the blog. A user can "hide" his/her blog, meaning that only users who are following the blog will be able to see the content. A user can password protect a secondary blog (but not their primary blog), thereby restricting access to members with whom he/she chooses to share the web address and password.

According to the Community Guidelines section of Tumblr's web site, "Tumblr is deeply committed to supporting and protecting freedom of speech. At the same time, we draw lines around a few narrowly defined, but deeply important categories of content and behavior that jeopardize our users, threaten our infrastructure, and damage our community." Amongst the type of content Tumblr does not permit is any content harmful to minors, which it defines as "suggestive or sexual content involving a minor or anyone that appears to be a minor, or that

facilitates or promotes child sexual abuse." *See* tumblr.com/policy/en/community (last updated July 16, 2020).  According to the Law Enforcement Guidelines section of the Tumblr web site, "Tumblr reports any apparent instances of child exploitation it discovers to the National Center for Missing and Exploited Children (NCMEC)…" *See* tumblr.zendesk.com/hc/en-us/articles/231925668-Law-Enforcement-Guidelines (October 21, 2020).

*Tumblr's CyberTip #1 - bossadin and bossadin.tumblr.com*

On August 17, 2020, Tumblr submitted CyberTip #1 to the National Center for Missing and Exploited Children (NCMEC).  In CyberTip #1, Tumblr identified the user bossadin (blog URL bossadin.tumblr.com, Chris_rondeau2@yahoo.com) as the account holder of a blog that contained apparent (later confirmed by FBI) child pornography.  The email and username are the same as the information located on Rondeau's iPhone in 2015.  Specifically, Rondeau's email address, chris_rondeau2@yahoo.com, was associated with his Kik account and his Instagram user name was "bossadin."  Tumblr identified IP address 24.177.59.142 (August 17, 2020 at 03:49:38 UTC) as the last IP address associated with the user at the time of the report.  Personnel at Tumblr viewed the contents of the blog and provided NCMEC with a representative sample of 18 image files from the blog's contents.  According to the information contained in CyberTip #1, the offending posts were made to the blog between August 14, 2020, at 17:02:48 EDT and August 16, 2020, at 23:20:06.  Tumblr identified offending posts made to the blog specifically from IP address **24.177.59.142** between August 14, 2020, at 17:02:48 EDT and August 15, 2020 at 17:06:08 EDT.[2]  Three of the images depict minor females engaged in sexually explicit conduct:

---

2 According to CyberTip #1, offending posts were made using several IP addresses, including 24.177.59.142.

- **Image 1** depicts a nude prepubescent minor female with long brown hair sitting with her right leg in the air and her legs spread lasciviously displaying her genitalia.

- **Image 2** depicts a nude prepubescent female with brown eyes and brown hair styled in three pigtails leaning back on her elbows with her legs spread lasciviously displaying her genitalia.

- **Image 3** depicts a nude prepubescent female with light brown hair lying on her back with her left hand behind her head, right hand on her upper chest, and legs spread lasciviously displaying her genitalia.

*Tumblr's CyberTip #2 - yngsthings and yngsthings.tumblr.com*

About two weeks later, on September 3, 2020, Tumblr submitted CyberTip #2 to NCMEC to identify the user yngsthings (blog URL yngsthings.tumblr.com, bossadin@protonmail.com) as the account holder of a blog that contained apparent (later confirmed by FBI) child pornography. In CyberTip #2, Tumblr identified IP address 24.177.59.142 (September 2, 2020 at 20:38:13 UTC) as the last IP address associated with the user at the time of the report. Personnel at Tumblr viewed the contents of the blog and provided NCMEC with a representative sample of six image files from the blog's contents. According to CyberTip #2, the offending posts were made to the blog between August 30, 2020 at 15:37:35 EDT and September 2, 2020 at 18:16:04. Tumblr identified offending posts made to the blog specifically from IP address 24.177.59.142 between August 30, 2020 at 15:37:35 EDT and September 2, 2020 at 18:15:31 EDT.[3] Two of the images are specifically described below:

- **Image 1** depicts what appears to be a minor pubescent female with brown hair and brown eyes (wearing only a beaded necklace) performing oral sex on an adult male.

- **Image 2** depicts a minor female wearing a light blue t-shirt lying on her back with her legs spread lasciviously displaying her genitalia and anus. An inflatable blue and white shark is depicted behind her head. A yellow time stamp on the bottom right of the image that says "08 06 2004 16:45."

---

[3] According to CyberTip #2, the offending posts were made using three different IP addresses, with the majority posted using IP address 24.177.59.142.

*Tumblr's CyberTip #3 - keenexpertkidhairdo and keenexpertkidhairdo.tumblr.com*

A few days later, on September 7, 2020, Tumblr submitted CyberTip #3 to NCMEC to identify user keenexpertkidhairdo (blog URL keenexpertkidhairdo.tumblr.com,daddydin@ protonmail.com) as the account holder of a blog that contained apparent (later confirmed by FBI) child pornography. Tumblr identified IP address 24.177.59.142 (September 5, 2020 at 03:21:32 UTC) as the last IP address associated with the user at the time of the report. Personnel at Tumblr viewed the contents of the blog and provided NCMEC with a representative sample of nine image files from the blog's contents. According to the information contained in CyberTip #3, the offending posts were made to the blog between September 2, 2020 at 23:19:52 EDT and September 5, 2020 at 08:55:07. Tumblr identified offending posts made to the blog specifically using IP address 24.177.59.142 between September 2, 2020 at 23:19:52 EDT and September 4, 2020 at 22:23:04 EDT.[4] One image depicts who appears to be a pubescent minor female on her hands and knees with her legs spread lasciviously displaying her genitalia and anus.[5]

On October 21, 2020, agents served an administrative subpoena upon Spectrum/Charter Communications ("Charter") for the subscriber associated with IP address 24.177.59.142 from August 10, 2020, through September 8, 2020. On October 26, 2020, Charter identified an individual (not Defendant) residing at 61 School Street, Auburn, Massachusetts, as the subscriber

---

[4] According to CyberTip #3, the offending posts were made using several different IP addresses. The majority, however, were posted using IP address 24.177.59.142.

[5] NCMEC also received another CyberTipline report (79088717) on September 7, 2020, which contained the same information that was reported in CyberTip #3  Further, NCMEC received additional CyberTipline reports on August 19, 2020, August 25, 2020, and September 8, 2020 from Tumblr identifying three other Tumblr users: bauwssworld (blog URL bauwssworld.tumblr.com, bossadin@outlook.com), bauwssworld3 (blog URL bauwssworld3.tumblr.com, bauwssworld4@ gmx.com), and psychicdonutdiplomatdragon (blog URL psychicdonutdiplomatdragon. tumblr.com, bauwss@protonmail.com) as account holders of a blog that contained either apparent child pornography or child images (clothed). Tumblr identified IP address 24.177.59.142 as the last IP address associated with all three users at the time the reports were submitted. Upon review of the files associated with the three reports, the FBI determined that the suspect images did not constitute "sexually explicit conduct," as defined in Title 18, U.S.C. § 2256.

associated with the IP address during the requested time frame.[6] The Massachusetts Registry of Motor Vehicles records showed an active Massachusetts driver's license in the name of Christopher Rondeau, year of birth 1985, with a residential address of 61 School Street, Auburn, Massachusetts. The U.S. Probation Officer assigned to supervise Rondeau confirmed that Rondeau resided at 61 School Street with his step-father, step-mother, and his step-brother.

*Search Warrant Execution and Defendant's Arrest*

On November 4, 2020, agents obtained search warrants for Defendant's residence and his three Tumblr accounts and associated blogs.[7] On November 6, 2020, agents executed the residential search warrant. After completing a written consent form, Defendant agreed to speak with agents. Their conversation was recorded. During this first session, Defendant initially denied accessing or viewing child pornography. After the first session ended, agents searched Defendant's bedroom utilizing a device for locating cell phone signals and located an Alcatel 6062W mobile device (the "Alcatel Phone"), a device not authorized by the Probation Office, hidden underneath a dresser in Defendant's bedroom. The Alcatel Phone was powered on and it was connected to the internet service when it was located. After taking photographs to document the location where the Alcatel Phone was discovered and detailed photographs of the Alcatel Phone itself, agents then placed the Alcatel Phone into airplane mode.

While accessing the settings menu from the lock screen, notifications from what appeared to be the Kik Messenger application were observed. These notifications contained following text: (i) "Anything goes, Chat and have fun Nude: Nice vids;" (ii) Worc ma.USA35+singles

---

[6] Charter identified this individual as the subscriber associated with IP address 24.177.59.142 from July 8, 2020 at 09:48:01 p.m. to October 19, 2020 at 9:31:34 p.m. EDT. Among others, Charter provided email addresses crondeau2@charter. net as associated with the account.

[7] Each of the four search warrants are supported by a common affidavit.

Casion: Empty profile pict…;" (iii) "Pteen fun Alex: New picture message!;" (iv) "ChillPedBros (15 & Up) Joe: Nice!!!!; (v)"Teen_tra.des Teen_Tra.des:Maruys Popes… +5."  Defendant had previously provided agents with a "swipe pattern" to unlock two other Samsung devices, both of which had been previously authorized by the Probation Office.  Agents used that same swipe pattern to successfully unlock the Alcatel Phone.  An advanced logical data extraction was successfully conducted.

Agents then conducted a preliminary analysis of the Alcatel Phone and located a photo that depicted an adult male resembling Defendant with a beach setting in the background.  Further analysis of the Alcatel Phone revealed that the device contained approximately 168 video files and approximately 1018 image files in total.  Initial review of the 1018 image files revealed approximately 23 images depicting child pornography, with likely additional image files depicting child pornography on the Alcatel Phone.

The initial review of the video files showed that almost all of the 168 files appeared to depict pornography of females, and many of those files appeared to depict child pornography.  According to the agents, the female minors depicted in the videos range from approximately 5-17 years old.  In some of the videos, the age of the females depicted is difficult to determine, though there are multiple child pornography videos with children in the approximate age range of 5-9 years old. For example, one video file, which is approximately 12 seconds in length, depicts a nude prepubescent female minor, who appears to be approximately 5 to 6 years old, kneeling on her hands and knees.  A nude adult male is kneeling behind her and appears to be placing his penis into her genital area, and another nude adult male is kneeling in front of her, placing his penis into the prepubescent female minor's mouth.  A second video file, which is approximately 8 minutes and 28 seconds in length, depicts a nude prepubescent female minor,

approximately 7-9 years old, laying on her back.  Her legs and waist are tied with rope, and her vagina is exposed to the camera.  A nude adult male is seen standing over the female minor's face, inserting his erect penis into her mouth.  At approximately 3 minutes into the video, the scene changes, and the remainder of the video depicts other sexual acts involving the same prepubescent female minor and the same adult male.

Agents spoke with Defendant a second time.[8]  This conversation, like the first, was recorded.  After reminding Defendant of his *Miranda* warnings, Defendant again agreed to speak with agents.  During this conversation, Defendant admitted the Alcatel phone was his, that he obtained it while he was at the Coolidge house, that he used it to connect to Wifi, and that he possessed it since February 2019.  At this point, the Defendant requested an attorney. The questioning ended and the recorder was turned off. The Defendant was arrested at the conclusion of the search of his home and a criminal complaint was issued the same day.  A petition seeking revocation of his supervised release followed shortly thereafter. The Defendant waived a preliminary hearing and consented to detention.

## Discussion

In his first motion, Defendant argues that Tumblr violated his Fourth Amendment rights when its employees reviewed the content of his accounts and reported his child pornography to NCMEC. In his second motion, Defendant argues that the agents violated *Miranda* rights and his statements should be suppressed. In his third motion to suppress, Defendant argues that the residential search warrant suffered a series of flaws that merit suppression of evidence seized

---

[8] Agents started and stopped the recording by accident during the session.  It lasted several seconds.  From the context, there appeared to be a misstep in starting the recording device.

from his home. Finally, Defendant argues in his fourth motion to suppress that three Tumblr search warrants were also illegally searched. The Court will address each motion in turn.

*Tumblr Reports*

In August and September 2020, Tumblr detected child pornography on its platform in three accounts belonging to Defendant: (i) bossadin and bossadin.tumblr.com (CyberTip #1); (ii) yngsthings and yngsthings.tumblr.com (CyberTip #2); and (iii) keenexpertkidhairdo and keenexpertkidhairdo.tumblr.com (CyberTip #3).  When it detected child pornography, Tumblr personnel viewed the suspected child pornography *before* sending to NCMEC.  As set forth in detail above, Tumblr is a private company and it is not associated with law enforcement.  Tumblr has Community Guidelines section on its site, where it specifically informs its users that it does not permit any content harmful to minors, which it defines as "suggestive or sexual content involving a minor or anyone that appears to be a minor, or that facilitates or promotes child sexual abuse."   According to the Law Enforcement Guidelines section of the Tumblr web site, "Tumblr reports any apparent instances of child exploitation it discovers to the National Center for Missing and Exploited Children (NCMEC)…"  When Tumblr does so, as it did in this case with the Defendant's accounts, it acts as a private entity.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, this prohibition only pretermits government action. *See United States v. Jacobsen*, 466 U.S. 109, 119, 104 S.Ct. 1652 (1984); *United States v. Silva*, 554 F.3d 13, 18 (1st Cir. 2009). Thus, the Fourth Amendment is not implicated when a private party undertakes a search or seizure, regardless of the reasonableness of her conduct, unless she is acting as a government

agent. *See Jacobsen*, 466 U.S. at 11; *Silva*, 554 F.3d at 18. *See U.S. v. Rivera-Morales*, 961 F.3d 1, 7–8 (1st Cir. 2020).

A private search only implicates the Fourth Amendment if the private party acts as a "government agent." In *Silva,* the First Circuit provided that in determining whether a private party has acted as a government agent, courts must consider three factors: (1) "the extent of the government's role in instigating or participating in the search"; (2) "[the government's] intent and the degree of control it exercises over the search and the private party"; and (3) "the extent to which the private party aims primarily to help the government or to serve its own interests." *United States v. Silva,* 554 F.3d at 18. The First Circuit will not find that a private party has acted as an agent of the government "simply because the government has a stake in the outcome of a search." *Id.*

Here, there is no evidence to suggest that the government had any role in Tumblr's decision to review and report Defendant's child pornography to NCMEC nor did Tumblr act as a government agent. A Tumblr employee reviewed the images prior to sending it to law enforcement. Accordingly, the Defendant's Fourth Amendment rights were not violated, and suppression of the images is not warranted.

*Statements and Evidence*

In the Defendant's second motion to suppress, he argues that his interview with the agents was both a custodial interrogation and involuntary. The circumstances of the day in question lead the Court to conclude that Defendant was not in custody at the time he was questioned by the agents and that his statements and cooperation were voluntary.

"Any statements obtained as a result of custodial interrogation in the absence of Miranda warnings must be suppressed." *United States v. Jackson*, 544 F.3d 351, 356 (1st Cir. 2008). The

term "interrogation" refers to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980). "A volunteered statement is not the product of interrogation and is not subject to suppression, even if warnings have not been provided." *Jackson*, 544 F.3d at 357. A defendant is in "custody" when the circumstances surrounding the interrogation objectively constitute the restraint on freedom associated with a formal arrest. *See United States v. Hughes*, 640 F.3d 428, 435 (1st Cir. 2011).

The custodial inquiry is an "objective, suspect-focused" examination that is "informed by our assessment of the reasonableness of the detaining officer['s] ... actions in response to developing conditions." *United States v. Chaney*, 647 F.3d 401, 409 (1st Cir. 2011). A finding of custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." )). *U.S. v. Cruz-Rivera*, 14 F.4th 32, 47–48 (1st Cir. 2021), *citing United States v. Melo*, 954 F.3d 334, 340 (1st Cir. 2020) (*quoting Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526 (1994) (per curiam)). For the first step, to "ascertain whether ... a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave[,]' " *Howes*, 565 U.S. at 509 (alteration in original) (*quoting Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457 (1995)), we look to a number of factors "relevant to this aspect of our custody analysis," *Melo*, 954 F.3d at 340." Id. at 48. These include "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." *Id*. (*quoting United States v. Masse*, 816 F.2d 805, 809 (1st Cir. 1987)).

Here, Defendant was questioned within his residence by two agents while another officer stood nearby. Before and during the interview, neither agent brandished their weapon, and both spoke to Defendant cordially. Initially, the agents and Defendant began the conversation by laughing and joking. After an agent read Defendant his *Miranda* warnings, she showed Defendant the Advice of Rights form and explained that the form stated that Defendant received his warnings and was choosing to speak to the agents but was not an admission of guilt. The defendant then signed the form. At no point did Defendant ask to leave, terminate the interview, or request an attorney until the conclusion of the second interview when the questioning immediately ceased. Defendant was not physically restrained an no threats were made to the Defendant. The first interview lasted approximately one hour and five minutes and the second interview lasted only approximately six minutes. Given these facts, the Court finds that the Defendant's interview with the agents was not custodial.

Inherent in Defendant's claim is that his statements were involuntary, and thus his confession and the fruits of his cooperation with the police should be suppressed. The voluntariness of a confession and the validity of a waiver are decided "in light of the totality of the circumstances." *Procunier v. Atchley*, 400 U.S. 446, 453 (1971) (voluntariness); *North Carolina v. Butler*, 441 U.S. 369, 374-375 (1979) (waiver). Relevant factors that courts have considered include promises or other inducements, the defendant's age; education; intelligence and emotional stability; his physical and mental condition; and the details of the interrogation, including its length, intensity, and any degree of trickery or deceit on the part of the interrogators. *United States v. Hughes*, 640 F.3d 428, 438 (1st Cir. 2011); *United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014) (internal citation omitted). Assessing the voluntariness of a confession requires examining the totality of the circumstances, balancing "the officer's

tactics with the unique background of each individual suspect," to determine "whether the government's conduct overtook the will of the defendant." *United States v. Hufstetler*, 782 F.3d 19, 22 (1st Cir. 2015).

"Only confessions procured by coercive official tactics should be excluded as involuntary." *United States v. Boskic*, 545 F.3d 69, 78 (1st Cir. 2008) (internal quotation marks and alteration omitted); *see also Bryant v. Vose*, 785 F.2d 364, 368 (1st Cir. 1986) (finding a confession voluntary where it was not "the product of coercion or other improper tactics."). The more familiar or neutral the setting of the interview, the less likely it will be deemed to have a coercive overtone, as is usually the case when questioning takes place in a suspect's own home. *See Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612 (1976). The tone of the interrogation may also figure in the determination of whether the setting was custodial. *See id.* at 343, 96 S.Ct. 1612 (conversation was "friendly," "relaxed," and "[un]press[ing]"); *United States v. Leyva,* 659 F.2d 118, 120 (9th Cir.1981) (questioning was "low-key").

Here, the Defendant was experienced in legal proceedings, followed the line of questioning and gave clear and responsive answers. The Defendant also answered all the agents' questions coherently and without difficulty. These characteristics of the interview indicate that Defendant was able to understand the proceedings against him and voluntarily relinquish his rights.

*Search Warrant*

The Fourth Amendment, which protects individuals against unreasonable government searches and seizures, provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A warrant is based on probable cause when "the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has

been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Aguirre*, 839 F.2d 854, 857-858 (1st Cir. 1988). Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). "The standard of probable cause is the probability, not a *prima facie* showing, of criminal activity." *United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986); *see also Safford v. Unified Sch. Dist. of Redding*, 557 U.S. 364, 371 (2009).

      Where a defendant challenges the legality of a search conducted pursuant to a search warrant, he bears the burden of showing by a preponderance of the evidence that the search was unlawful. *United States. v. Legault*, 323 F. Supp. 2d 217, 220 (D.Mass. 2004); *see United States v. Burdulis*, No. 10-40003, 2011 WL 1898941, at *3 (D.Mass. May 19, 2011) (citing cases). The issue for the reviewing court is whether "the totality of the circumstances" in the affidavit afforded the clerk magistrate a "substantial basis for determining the existence of probable cause" for the search. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1983). A reviewing court "must examine the affidavit in a practical, commonsense fashion" and "accord considerable deference to a magistrate's determination that information in a particular affidavit establishes probable cause." *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999) (internal quotation marks and citation omitted).

      In the third and fourth motions to suppress, Defendant argues that the search warrants for his residence and for his Tumblr accounts suffer from numerous deficiencies including an overbroad Attachment B to the affidavit, staleness, a lack of wrongdoing alleged, and a lack of probable cause. The Defendant further moves that all evidence resulting from those searches should also be suppressed.

The Fourth Amendment's particularity requirement focuses on two concerns: "one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take, and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." *United States v. Upham,* 168 F.3d 532, 535 (1st Cir.1999) (citations omitted). A warrant authorizing seizure of a suspect's home computer equipment and digital storage media for later off-site electronic search is not overbroad or unreasonable, as long as the probable-cause showing in the warrant application demonstrates a "sufficient chance of finding some needles in the computer haystack ." *Upham,* 168 F.3d at 535. As the *Upham* court explained:

> As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images.... [A] search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs.... [I]f the images could be easily obtained on-site, there might have been no justification for seizing all computer equipment because it would include equipment with no connection to the crime. But it is no easy task to search a well-laden hard drive by going through all of the information it contains ....

*Id*. *See also United States v. Grimmett,* 439 F.3d 1263, 1267 (10th Cir.2006) (holding that warrant authorizing search and seizure of "any and all computer hardware, ... software," computer equipment, and computer storage devices was not overbroad).

Here, the Defendant in support of his claim that the search warrant being overly broad, asserts only that "in the case at bar, paragraph I.A of Schedule B describes the materials sought but paragraph B does not limit the search of the computers to that of child pornography."

The language in Attachment B is narrower than the warrants upheld in *Upham*. Attachment B to the affidavit clearly spells out that Paragraphs A through G fall under paragraph I, which limits the scope of the items that can be seized as pertaining to child pornography, specifically citing to the statute, 18 U.S.C. §§ 2252A(a)(5)(B) and (a)(2). *See* Docket No. 79,

(sealed), p. 32-34. Moreover, Attachment B is supported by statements in the affidavit setting forth that criminal activity occurred over the internet through electronic equipment. The affidavit further notes that individuals who consume child pornography often save such images in array of other electronic equipment. Consistent with the language in Attachment B, agents only seized computer equipment that constituted "evidence, fruits, or instrumentalities" of the possession and distribution of child pornography. The Court finds that the limitations in the warrant were specific as to the type of devices and materials that could be seized.

The Defendant further contends that the search warrant is based on stale information because the Tumblr Report was dated August 17, 2020, and the search warrant was not obtained until approximately four months later. "[A]n affidavit supporting a search warrant must contain timely information or else it will fail." *United States v. Schaefer*, 87 F.3d 562, 568 (1st Cir. 1996); *see also Sgro v. United States*, 287 U.S. 206, 210-211 (1932). However, "[w]hen evaluating a claim of staleness, [courts] do not measure the timeliness of information simply by counting the number of days that have elapsed." *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008). Rather, the court must "consider[ ] various factors, including 'the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information' in assessing the information's ripeness." *United States v. Tiem Trinh*, 665 F.3d 1, 13 (1st Cir. 2011), *quoting Morales-Aldahondo*, 524 F.3d at 119.

In *Morales-Aldahondo*, the Court found that a search warrant was not stale despite the passage of three years since law enforcement acquired information that the defendant had accessed child pornography. *Id.* The Court pointed to information provided by the government that "customers of child pornography sites do not quickly dispose of their cache. This is not a new revelation." *Id.*, *citing United States v. Irving*, 452 F.3d 110 (2d Cir. 2006) (no staleness

after two years); *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005) (no staleness after five years); *United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (five year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"). Here, the underlying facts and the caselaw support a finding that the information contained in the affidavit of a four month difference between the time that of the Tumblr report and the search warrant does not render the information stale and provided ample probable cause to believe that child pornography would be found at the Defendant's residence.

Finally, the Defendant challenges the search warrant because the training and experience alleged by the affiant did not provide sufficient probable cause of wrongdoing. This argument comes up short. Here, the search warrant here did not rely exclusively on the agent's training and experience but also relied on the Defendant's documented criminal activity to serve as the basis for the warrant. *See United States v. Feliz,* 182 F.3d 82, 87 (1st Cir. 1999) (magistrate judge is entitled to accord some weight to an agent's experience and opinions); *United States v. Barnes*, 506 F.3d 58, 62-63 (1st Cir. 2007) (listing cases upholding a finding of probable cause based on collective knowledge of officers).  In addition, the affidavit contained the nexus element as the basis for the search warrant, that is the documented criminal activity between the Defendant's Address and the Tumblr Report with the IP address registered to the Auburn address. *United States v. Lindsey*, 3 F.4th 32, 39 (1st Cir. 2021), *citing United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015).

## **Conclusion**

For the reasons set forth above, Defendant's Motion to Suppress Statement (Docket No. 55), Motion to Suppress Warrantless Search (Docket No. 59), Motion to Suppress Search Warrant (Residence) (Docket No. 66) and Motion to Suppress Search Warrant (Tumblr) (Docket No. 71) are ***denied***.

**SO ORDERED.**

                                                */s/ Timothy S. Hillman*
                                                **TIMOTHY S. HILLMAN**
                                                **DISTRICT JUDGE**